{¶ 12} Because the report of Dr. McFadden alone is "some" evidence to support the commission's determination, I respectfully dissent.
 {¶ 13} Dr. McFadden's report states that claimant is unable to engage in sustained remunerative employment due to the allowed psychological conditions. Accepted as true, his report supports the commission's determination that claimant is entitled to PTD compensation.
 {¶ 14} While the majority concludes that the SHO's report reflects limited reliance on Dr. McFadden's report, I disagree. The SHO quoted and relied on nearly all of the language Dr. McFadden used to support his conclusion that the claimant is incapable of sustained remunerative employment as a result of the allowed condition. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, requires no more. Although the report's language necessarily is limited because Dr. McFadden addressed only the psychological aspects of the allowed conditions, it nonetheless supports the SHO's determination: the claimant's inability to perform sustained remunerative employment due to one of the allowed conditions is grounds for finding the claimant entitled to PTD compensation.
 {¶ 15} Moreover, while the majority would send this matter back to the commission because the SHO relied on Dr. Timms' report to set the start date at July 15, 2004, Dr. McFadden completed his report only four days later. I would modify the start date to coincide with Dr. McFadden's report.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Wheeling-Pittsburgh : Steel Corp., : :
Relator, : :
v. : No. 05AP-913 :
Industrial Commission of Ohio : and James A. Runyan, : Respondents. :
 MAGISTRATE'S DECISION Rendered on February 24, 2006 Vorys, Sater, Seymour and Pease LLP, Bradley K. Sinnott andBethany R. Thomas, for relator.
Jim Petro, Attorney General, and Sandra E. Pinkerton, for respondent Industrial Commission of Ohio.
Larrimer and Larrimer, and Thomas L. Reitz, for respondent James A. Runyan.
 IN MANDAMUS {¶ 16} In this original action, relator, Wheeling-Pittsburgh Steel Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding to respondent James A. Runyan ("claimant") permanent total disability ("PTD") compensation, to rehear the PTD application, and to enter a new order that complies with this court's resolution of the issues presented in this action.
Findings of Fact:
 {¶ 17} 1. Claimant sustained two industrial injures while employed with relator, a self-insured employer under Ohio's workers' compensation laws. His October 22, 1994 injury is allowed for "sprain lower back; L4-S1 disc herniation," and is assigned claim number L269460-22. His April 20, 2000 injury is allowed for "herniated disc at L4-5 and L5-S1; dysthymic disorder," and is assigned claim number 00-430927.
 {¶ 18} 2. On May 1, 2000, Dr. El-Kadi performed a left L4-5 microdiscectomy.
 {¶ 19} 3. In November and December 2000, Dr. Sutherland administered transforaminal epidural steroid injections at the left L4-5 and left S1 levels.
 {¶ 20} 4. In January 2004, Dr. Bloomfield surgically inserted a permanent infusion system to administer Morphine. Claimant developed side effects from the Morphine and so the Morphine was discontinued and claimant was administered Fentanyl instead.
 {¶ 21} 5. On January 10, 2005, claimant filed an application for PTD compensation.
 {¶ 22} 6. In support of his application, claimant submitted a report dated July 15, 2004, from attending physician Stephen R. Timms, M.D. Dr. Timms' July 15, 2004 report is in actuality his handwritten responses to queries on a preprinted form apparently prepared by relator's counsel.
 {¶ 23} On the form, Dr. Timms lists the claim number for the April 20, 2000 industrial injury.
 {¶ 24} Question number seven on the form asks: "Do you feel patient is able to engage in sustained remunerative employment?" In response, Dr. Timms circled "No."
 {¶ 25} Question number nine on the form asks: "Would patient benefit from rehabilitation?" In response, Dr. Timms wrote: "Voc. Rehab." which translates to "Vocational Rehabilitation."
 {¶ 26} 7. In further support of his PTD application, claimant submitted a report dated July 19, 2004 from attending psychologist John F. McFadden, Psy.D. Like Dr. Timms' report, Dr. McFadden's report is in actuality Dr. McFadden's mostly handwritten responses to the same preprinted form.
 {¶ 27} 8. As Dr. Timms' did, Dr. McFadden responded "No" to question number seven. In response to question number nine on the form, Dr. McFadden wrote "No."
 {¶ 28} 9. In further support of his PTD application, claimant submitted Dr. McFadden's typewritten office notes. The record contains 26 office notes beginning March 11, 2003 to June 14, 2004, a period of approximately 15 months.
 {¶ 29} 10. On April 7, 2005, at the commission's request, claimant was examined by Robin G. Stanko, M.D. Dr. Stanko specializes in physical medicine and rehabilitation. Dr. Stanko examined for all of the physical conditions of both industrial claims. Dr. Stanko reported:
OPINION: From my examination and review of the file including treatments rendered for this condition, it is my opinion that this claimant has reached maximal medical improvement and that the condition has become permanent. Based on the AMA Guides tothe Evaluation of Permanent Impairment, Fourth Edition, in my opinion, the impairments of the claimant place him in DRE Lumbosacral Category III using Table 70 (page 108); giving him a permanent impairment of 10% whole person for the allowed musculoskeletal conditions in this claim. I feel the claimant could perform activity at sedentary work levels, that is lifting up to ten pounds with rare walking activity.
 {¶ 30} 11. On a Physical Strength Rating form dated April 7, 2005, Dr. Stanko indicated that the industrial injury permits only "sedentary work." The form contains the commission's definition of sedentary work.
 {¶ 31} 12. Following a June 14, 2005 hearing, a staff hearing officer ("SHO") issued an order granting the PTD application. The SHO order explains:
The Staff Hearing Officer relies upon the reports of: Dr. Timms; Dr. McFadden and Dr. Stanko.
The claimant had sustained two industrial injuries. On 10/22/1994, the claimant was pushing a coil toward a car and slipped on oil and hurt his lower back. The claim was allowed for a lower back sprain and L4-S1 disc herniation. The claimant had no surgeries following this 10/22/1994 industrial injury.
The claimant returned to work at Wheeling-Pittsburgh Steel and sustained a second industrial injury on 04/20/2000 while working as a seven washer helper. The claimant was climbing down from the ram tractor and slipped and fell. The claim was allowed for herniated discs from L4-5, L5-S1 and for a dysthymic disorder.
The claimant had two lumbar surgeries. The claimant had a left L4-S1 microdiscetomy. In addition, the claimant had a morphine pump implanted in January of 2004.
Currently, the claimant treats with Dr. Bloomfield once every two weeks, and treats with Dr. McFadden once ever[y] two to three weeks. The claimant's morphine pump uses Fentanyl rather than Morphine. The claimant also takes medications which include: Neurontin; Lexapro; Percocet; and Flexeril. The claimant utilizes a left foot and leg brace, (AFO) for his left foot drop and a cane in order to walk.
The claimant last worked on 04/20/2000, the date of the second industrial injury.
According to Dr. Timms' 07/15/2004 report, the claimant has back pain, and left lower extremity weakness and is unable to engage in sustained remunerative employment.
According to Dr. McFadden's 07/19/2004 report, the claimant has chronic pain and depression and has difficulty managing chronic pain and depressive mood which affects his ability to concentrate. Dr. McFadden opined that the dysthymic disorder prevents him from engaging in sustained remunerative employment.
Dr. Stanko, an Industrial Commission Specialist, examined the claimant on 04/07/2005. He indicates the claimant has constant lower left leg pain and weakness. The claimant's pain worsens if he walks more than ten minutes. The claimant has to use a cane for support. The claimant has decreased sensation to light touch in the left lower extremity. The claimant has lumbar range of motion of 35 degrees of flexion; 15 degrees of extension; and 20 degrees of right lateral and left lateral flexion. The claimant has no tenderness with palpation of the sacroiliac joint or hip abductor muscles bilaterally, but has left gluteal muscle tenderness, and tenderness to the left lumbosacral paraspinals. Dr. Stanko opined the claimant is capable of sedentary work but is limited to "rare walking activity". The Staff Hearing Officer notes that this limitation further limits the claimant from the sedentary work classification as sedentary work involves walking for brief periods of time.
The Staff Hearing Officer finds the physical restrictions due to the allowed conditions would prevent the claimant from performing even sedentary work.
The claimant is unable to walk except rarely, according to Dr. Stanko.
In addition, the claimant's past employment experiences involved all very heavy work positions. The claimant worked since high school at Wheeling-Pittsburgh Steel until 04/2000 when he was rendered disabled. The claimant worked approximately 23 years for one employer performing only very heavy positions. The Staff Hearing Officer relies on the claimant's testimony at hearing relative to his past positions of: laborer; remote control crane operator; line operator (AKA mill operator); and seven washer helper. The claimant would lift, push/pull, over 50 pounds in each of these past jobs on a frequent basis. At the time of the 04/20/2000 industrial injury, the claimant worked as a seven washer helper. He would climb up and down a ram tractor repeatedly, and would lift the tail end of a coil to put on a machine. The claimant lifted frequently between 75 to 125 pounds according to the claimant's testimony at hearing.
The Staff Hearing Officer finds no transferable skills were obtained from these past jobs to sedentary jobs, or jobs which require rare walking.
The Staff Hearing Officer finds the claimant's physical imitations prevent claimant from even performing sedentary work per Dr. Stanko's report. The Staff Hearing Officer finds the allowed dysthymic disorder affects the claimant's ability to concentrate, which further limits the claimant's ability to learn new tasks and skills. Finally, the claimant's past occupations do not provide any transferable skills for which the claimant is physically capable of performing as all past occupations involved very heavy manual work with little cognitive or analytical tasks. The Staff Hearing Officer therefore finds the claimant was rendered permanently and totally disabled due to the 2000 claim (00-430927).
The Start date of the payment of the Permanent and Total Disability Compensation is 07/15/2004. The Staff Hearing Officer chooses this date because it is the date of the persuasive report of Dr. Timms.
 {¶ 32} 13. On August 31, 2005, relator, Wheeling-Pittsburgh Steel Corporation, filed this mandamus action.
Conclusions of Law:
 {¶ 33} Several issues are presented: (1) whether Dr. Timms' report constitutes some evidence upon which the commission can rely; (2) whether the commission abused its discretion by relying upon Dr. Stanko's report to support the conclusion that claimant is medically unable to engage in sedentary employment; and (3) whether the commission's award can be upheld based solely on the commission's reliance on Dr. McFadden's report.
 {¶ 34} The magistrate finds: (1) Dr. Timms' report does not constitute some evidence upon which the commission can rely; (2) the commission did abuse its discretion by relying upon Dr. Stanko's reports to support the conclusion that claimant is medically unable to engage in sedentary employment; and (3) Dr. McFadden's report provides the some evidence to support the commission's PTD award.
 {¶ 35} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 36} Turning to the first issue, it is settled law that equivocal medical opinions are not evidence. State ex rel.Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions or fails to clarify an ambiguous statement. Id.
 {¶ 37} As relator correctly points out, Dr. Timms' statement that claimant would benefit from vocational rehabilitation contradicts or undermines his earlier response to the form's query as to whether he "feel[s] patient is able to engage in sustained remunerative employment?"
 {¶ 38} Obviously, if claimant is medically unable to perform any sustained remunerative employment, he could not benefit from vocational rehabilitation because vocational rehabilitation cannot return the claimant to sustained remunerative employment if he is medically unable to return to sustained remunerative employment.
 {¶ 39} Dr. Timms' report is equivocal and thus must be eliminated from evidentiary consideration. Eberhardt, supra.
 {¶ 40} Turning to the second issue, the SHO's order states in part:
* * * Dr. Stanko opined the claimant is capable of sedentary work but is limited to "rare walking activity". The Staff Hearing Officer notes that this limitation further limits the claimant from the sedentary work classification as sedentary work involves walking for brief periods of time.
The Staff Hearing Officer finds the physical restrictions due to the allowed conditions would prevent the claimant from performing even sedentary work.
The claimant is unable to walk except rarely, according to Dr. Stanko.
* * *
The Staff Hearing Officer finds the claimant's physical imitations prevent claimant from even performing sedentary work per Dr. Stanko's report. * * *
 {¶ 41} Clearly, Dr. Stanko's report cannot provide some evidence to support the commission's conclusion that claimant's physical condition prohibits even sedentary work.
 {¶ 42} Ohio Adm. Code 4121-3-34(B)(2)(a) provides:
"Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 43} Recently, in State ex rel. Wainer v. Indus. Comm.,
Franklin App. No. 05AP-86, 2005-Ohio-6212, this court observed that the "sedentary work" definition permits some types of sedentary employment which do not require any walking or standing. In Wainer, the claimant was confined to a wheelchair due to his industrial injury. This court noted that the definition states that sedentary work may involve walking or standing for brief periods of time. Thus, it was proper for the commission to conclude in Wainer that the wheelchair bound claimant was medically able to perform sedentary work.
 {¶ 44} Dr. Stanko unequivocally opined that "claimant could perform activity at sedentary work levels, that is lifting up to ten pounds with rare walking activity." Dr. Stanko also indicated that claimant could perform sedentary work on the physical strength rating form.
 {¶ 45} Limiting sedentary employment to that which involves "rare walking activity" does not translate to an opinion that claimant is medically unable to perform any sustained remunerative employment, contrary to what the commission's order indicates.
 {¶ 46} Moreover, the commission cannot rewrite Dr. Stanko's report to say something that it does not say, because the commission has no medical expertise. State ex rel. YellowFreight Sys., Inc. v. Indus. Comm. (1998), 81 Ohio St.3d 56.
 {¶ 47} It is clear from the above analysis, that the commission abused its discretion by concluding that Dr. Stanko's report is some evidence supporting a finding that claimant cannot even perform sedentary work. While Dr. Stanko's report can constitute some evidence that claimant is medically able to perform some types of sedentary work, it is not some evidence supporting the commission's conclusion.
 {¶ 48} Turning to the third issue, the commission also relied upon Dr. McFadden's report to support its determination that claimant is permanently and totally disabled.
 {¶ 49} Relator concedes here that Dr. McFadden's report "could constitute `some evidence' to support a permanent total award" (Relator's brief, at 12.) even though relator feels that "Dr. McFadden makes the incredible assertion in her writing that a mild depressive disorder results in lifelong and complete disability." Id. at 10.
 {¶ 50} Regardless of relator's view of the weight it feels the commission should have given to Dr. McFadden's report, the commission credited Dr. McFadden's report and relator here presents no legal issue upon which this court could determine that Dr. McFadden's report must be removed from evidentiary consideration.
 {¶ 51} Because Dr. McFadden's report remains unchallenged in this action and, as relator concedes, it can constitute some evidence that claimant is permanently and totally disabled based solely upon the dysthymic disorder, the question arises as to whether the commission's PTD decision must be upheld even though the commission improperly relied upon the reports of Drs. Timms and Stanko. Relator argues that the commission's decision cannot stand, and that this court must order a rehearing of the PTD application.
 {¶ 52} Citing State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, and State ex rel. Mitchell v. Robbins Myers,Inc. (1983), 6 Ohio St.3d 481, relator asserts that the commission's explanation for its decision has lost its "intellectual force" in light of its improper reliance upon the reports of Drs. Timms and Stanko. Relator also claims:
It would be intellectually dishonest to assert that what the SHO "really" said was the reason for her decision was that Dr. McFadden, standing alone, asserted a complete inability to work. * * *
(Relator's brief, at 12.)
 {¶ 53} Relator's argument is answered by State ex rel.Galion Mfg. Div. Dresser Industries, Inc. v. Haygood (1991),60 Ohio St.3d 38, wherein the Supreme Court of Ohio upheld a commission PTD award noting, contrary to the employer's suggestion, that a claimant who has multiple allowed conditions is not required to show that each condition, standing alone, is work prohibitive.
 {¶ 54} In Galion, the employer directed its sole challenge to Dr. Lyon's report. The court noted that the employer ignored the commission's additional reliance upon Dr. Retter's reports. The court found that Dr. Retter's reports alone supported the PTD award.
 {¶ 55} The court followed the Galion case in State ex rel.Libbey-Owens-Ford Co. v. Indus. Comm. (1991), 62 Ohio St.3d 68. In Libbey-Owens-Ford, the commission relied upon the reports of Drs. Thomas and Steiman in rendering a PTD award. Dr. Thomas was the attending physician who concluded that claimant's allowed medical condition prevented sustained remunerative employment. Without addressing Dr. Steiman's report and observing that the commission had relied in part on Dr. Thomas' report, the court stated, at 69: "This report not only is `some evidence' supporting the commission's order but also provides a sufficient explanation, under [Galion], supra, of that order."
 {¶ 56} The magistrate notes that this court has also applied the Galion analysis to commission PTD decisions. State ex rel.Hills Dept. Stores Co. v. Sutton, Franklin App. No. 02AP-172, 2002-Ohio-6166; State ex rel. Caraustar Industries, Inc. v.Indus. Comm., Franklin App. No. 02AP-1225, 2003-Ohio-5209.
 {¶ 57} The magistrate notes, that in the instant action, the SHO unnecessarily analyzed the nonmedical factors, devoting several paragraphs of the order to that task. The magistrate further notes that much of the body of the SHO's order at issue is devoted to the analysis of the nonmedical factors and a discussion of Dr. Stanko's report.
 {¶ 58} However, that only a portion of the order relates to the commission's reliance upon Dr. McFadden's report does not automatically detract from the commission's reliance upon Dr. McFadden's report.
 {¶ 59} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.